IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 23-cv-00527-RM-SBP

ANNALISE YAHNE,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER DEPARTMENT OF HUMAN SERVICES,

    Defendant.

___

## ORDER
___

This employment case is before the Court on Defendant's Motion for Summary Judgment (ECF No. 59), which has been fully briefed (ECF Nos. 74, 81). The Motion is granted for the reasons below. Defendant's Motion to Strike (ECF No. 76) is denied as moot.

**I.  BACKGROUND**

Plaintiff began working for Defendant in May 2018. (ECF No. 81-1, ¶ 1.) She started as a project manager and was reclassified as a strategic advisor in January 2021. (*Id.* at ¶¶ 2, 3.) She resigned in April 2022. (*Id.* at ¶ 4.)

During her employment, Plaintiff complained repeatedly about a coworker, Brian Marson, whom she accused of unwelcome conduct directed toward her and other female employees. (ECF No. 57, ¶¶ 44, 47.) In her Amended Complaint, she alleges that Marson's conduct included: leering and staring at her; stalking and intimidating her; engaging in conduct causing her to fear him; making odd requests to her; appearing and sitting close

behind her at a meeting; targeting her at meetings; and refusing to cooperate with her.  (*Id.* at ¶ 46.)  She also alleges that Marson bullied and intimidated Plaintiff on four occasions in 2018 without providing any material details about those incidents.  (*Id.* at ¶ 48.)

Plaintiff complained to her supervisor about Marson's conduct on four occasions in 2018 and 2019.  (*Id.* at ¶¶ 56, 59, 61, 63.)  But the Complaint does not set forth what, specifically, Plaintiff said or what, specifically, Marson allegedly did.  In her Response, Plaintiff refers to written materials she sent to her supervisor "describing five incidents with Marson from June 24, 2018, through January 2, 2019," but again Plaintiff fails to disclose any specifics about what those materials say or what Marson's conduct entailed.[1]  (ECF No. 74 at 2.)

In response to those early complaints, Defendant decided Marson would no longer work with Plaintiff.  (ECF No. 57, ¶ 65.)  Defendant removed Marson from a workgroup Plaintiff was

---

[1] Although Plaintiff has not spelled out the factual basis for her internal complaints in her Complaint or Response, she appears to be relying on emails in the record describing Marson's conduct on five specific dates.  The Court has considered these emails and, in the absence of any effort by Plaintiff to describe their content, briefly summarizes them here for the sake of attaching some specific behavior to Plaintiff's vague and conclusory references to conduct she found offensive:
- On June 24, 2018, Marson shared his perspective on how Plaintiff should handle the Strategic Plan at a one-on-one meeting, which she perceived as an attempt to intimidate her.
- On July 18, 2018, Marson arrived at a happy hour when Plaintiff started presenting and then left when she did.  Plaintiff perceived this as intimidating behavior.
- On October 10, 2018, Marson stood behind Plaintiff at a happy hour and tried to look over her shoulder at the agenda, which made her uncomfortable.
- On October 11, 2018, Marson sat in the back of the room during a presentation and looked in Plaintiff's direction multiple times.
- On January 2, 2019, Marson arrived late to a meeting, sat in the back, and asked a question at the end of Plaintiff's presentation.  Based on his body language, Plaintiff thought he was undermining her work and being disrespectful.

(ECF No. 59-4 at 1-4.)

leading and directed him to stay away from her.  (*Id.*)

A few months later, Defendant promoted Marson to a new role in which he would be evaluating the Strategic Plan.  (*Id.* at ¶¶ 76, 77.)  Plaintiff had produced the previous Strategic Plan, and she considered the Plan to be her primary responsibility.  (ECF No. 74-1, ¶¶ 7, 12.)  Marson's promotion prompted further complaints by Plaintiff to her new supervisor and others in April, May, and September 2019.  (ECF No. 57, ¶¶ 79, 80, 83, 85, 88, 89.)  Plaintiff objected to Marson's promotion because three female employees had recently complained about him.  (*Id.* at ¶ 79.)  She also objected to him evaluating her work and having greater physical proximity to her, despite her understanding that she would not have to work with him anymore.  (*Id.* at ¶¶ 78, 79, 83.)  Plaintiff also reiterated her past complaints about Marson and stated that she felt unsafe around him.  (*Id.* at ¶¶ 86, 88.)

Plaintiff made other complaints about Marson in the months that followed.  In November 2019, she complained that he had commented on a female employee's skirt.  (*Id.* at ¶¶ 93, 94.)  In March 2020, she complained that he frequently walked by her desk for no reason.[2]  (*Id.* at ¶ 96.)  And in early 2021, she complained that he was acting inappropriately toward a new employee.  (*Id.* at ¶¶ 96-99.)

Around late 2021 and early 2022, Defendant's leadership was changing: Mimi Scheuermann became the new Chief Operating Officer, and Jay Morein became the new Executive Director.  (*Id.* at ¶¶ 11, 25.)  Around the same time, Plaintiff completed the next Strategic Plan, and there was some discussion by Defendant's leadership about reclassifying Plaintiff as a director.  (*Id.* at ¶¶ 108, 111, 112.)

---

[2] Defendant had Plaintiff move her workspace to address this issue.  (ECF No. 57, ¶ 96.)

However, according to Defendant, Scheuermann and Morein did not like Plaintiff's Strategic Plan and ultimately decided not to use it. (ECF No. 59 at 3.) In addition, Scheuermann and Morein did not think that Plaintiff's reclassification was warranted because her new position would not have enough responsibility compared to other directors. (ECF No. 81-1, ¶¶ 57, 62.) Scheuermann also thought the timing of the request was inopportune because the new leadership was reassessing the work performed by Plaintiff's team. (*Id.* at ¶ 65.)

A pivotal meeting of Defendant's leadership occurred on February 16, 2022. There, Plaintiff presented her proposed agenda for the upcoming strategic planning retreat. (ECF No. 57, ¶ 120.) When she was told that Marson would be attending the retreat, Plaintiff objected to his participation and repeated her concern that she and other women had made several complaints against him. (ECF No. 81-1, ¶¶ 27, 28.) Plaintiff also stated that she thought Defendant had agreed Marson would not be involved with anything she was working on. (*Id.*)

Sometime after the meeting, Plaintiff was told her agenda would not be used at the retreat, that she would no longer be leading strategic planning for Defendant, and that she would not be reclassified as a director. (*Id.* at ¶ 132, 135, 136.) Plaintiff resigned in April 2022, after securing another job.

In this lawsuit, Plaintiff asserts two claims under Title VII of the Civil Rights Act: (1) retaliation, and (2) sex discrimination in the form of a hostile work environment.[3] (ECF No. 74 at 1.)

---

[3] In her Response, Plaintiff states that she is asserting these two claims for relief. The Amended Complaint, however, contains brief and conclusory allegations of constructive discharge. (ECF No. 57, ¶¶ 162, 196.) Although Plaintiff seems to have abandoned this claim, the Court briefly addresses it in this Order, too.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in her favor.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

Where the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact.  *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019).  If the moving party demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of her claim, the burden shifts to her to set forth specific facts showing that

there is a genuine issue for trial.  *See id.*  If she fails to make a showing sufficient to establish the existence of an element, summary judgment must be entered in favor of the moving party.  *See id.*

### III. DISCUSSION

As a threshold matter, the Court addresses the Statement of Facts Plaintiff submitted with her Response to Defendant's Motion for Summary Judgment.  (ECF No. 75.)  Despite three extensions of the deadline, this filing was late (albeit by less than an hour).  (*See* ECF Nos. 61, 65, 73.)  Plaintiff concedes as much, arguing in response to Defendant's Motion to Strike (seeking to have Plaintiff's Statement stricken based on untimeliness) that the late filing did not prejudice Defendant.  (*See* ECF No. 77, ¶ 6, 15.)

In the interest of resolving this case on the merits, the Court considers Plaintiff's Statement to the extent it otherwise complies with this Court's Civil Practice Standards.  The Standards require a party opposing summary judgment to "set forth any additional material fact which [she] contends is undisputed or which [she] contends show summary judgment may not be had, along with evidence to support it."  Civ. Practice Standard IV.C.2.d.2.  But Paragraphs 87 through 138 of Plaintiff's Statement contain no factual statements, only citations to the record.  While this could have been an oversight, Defendant's Reply in support of its Motion for Summary Judgment clearly notified Plaintiff of the deficiency (ECF No. 81 at 1), and she has made no effort to clarify or amend her Statement.  It is not the Court's role to deduce the relevance of these untethered citations or to extract from them material facts to advance Plaintiff's claims.  Therefore, the Court declines to consider paragraphs 87 through 138 of Plaintiff's Statement in addressing the Motion for Summary Judgment.

### A.     Retaliation Claim

Defendant argues it is entitled to Summary Judgment on the retaliation claim because Plaintiff cannot establish a prima facie case for retaliation or show a genuine issue as to whether Defendant's stated reasons for any decisions related to her employment are pretextual. The Court agrees.

Title VII prohibits employers from retaliating against an employee who opposes any practice made unlawful under the statute. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008). If she makes this showing, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for its decision." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff then has the burden of demonstrating that the employer's asserted reasons are pretextual. *See Fye*, 516 F.3d at 1227.

   1.     <u>Prima Facie Case</u>

        a.     *Protected activity*

Defendant contends Plaintiff cannot establish the first element of her prima facie case because she did not complain about discrimination or harassment or mention any protected status at the February 2022 meeting; rather, she merely objected to Marson attending the retreat, noting that she and other women had made complaints against him, and stated that she believed Defendant had previously agreed she would not have to work with him. (ECF No. 81-1, ¶¶ 27, 28.) Defendant further contends that Plaintiff's statements at the February 2022 meeting are the

7

full extent of her alleged protected activity. (ECF No. 59 at 6-8.)

In her Response, Plaintiff does not point to any express statement she made at the February 2022 meeting about being discriminated against or harassed because of her sex or about opposing any practice made unlawful under Title VII. Instead, she contends that her statements at the meeting constituted protected activity because they were "intertwined with her prior complaints and [Defendant's] prior actions concerning Marson." (ECF No. 74 at 8.) She does not assert that she engaged in protected activity that supports her retaliation claim at any time other than the February 2022 meeting.

Assuming Plaintiff's past complaints about Marson were somehow incorporated by reference into her statements at the meeting, Plaintiff provides no meaningful details about the substance of those complaints and she admits she did not explicitly mention "sexual harassment" or "hostile work environment based on her gender" in those complaints. (*Id.* ECF No. 81-1 at ¶ 7.) She also admits she did not interact with Marson after March 2020. (*Id.* at ¶¶ 16, 17.)

In assessing the relevance of Plaintiff's past complaints about Marson in the context of the February 2022 meeting, the Court notes as well that Plaintiff concedes that Marson never: touched her; tried to touch her; asked her out on a date; flirted with her; tried to flirt with her; commented on her clothing or appearance; used language in her presence that was sexually charged or had sexual references within it; called her names or referred to her in a manner that was sexist or derogatory toward her gender; engaged in inappropriate sexual conversation or banter with her; used inappropriate language or discussed with her inappropriate subjects that involved her sex or gender; or verbally or physically threated her. (ECF No. 81-1, ¶¶ 18-23.) Further, Plaintiff has described no alleged conduct by Marson more serious than staring at her,

walking through her work area unnecessarily, standing near her, and sometimes being discourteous at meetings. (*See id.* at ¶¶ 8, 10, 14, 23.) Nor has she offered anything more than conclusory explanations to support her position that Marson's alleged conduct was directed at her based on her sex. Thus, on the current record, the Court finds there is no evidence from which a rational jury could conclude Plaintiff engaged in protected activity at the February 2022 meeting, and therefore Plaintiff has failed to establish the first element of her prima face case.

          b.     *Adverse action*

Defendant contends Plaintiff has also failed to show she experienced an adverse employment action that supports her claim.

In her Response, Plaintiff relies on two actions she contends were materially adverse: (1) Defendant's elimination of her duties related to the Strategic Plan, and (2) Defendant's cancellation of her reclassification as a director. (ECF No. 74 at 9.) But these actions, considered singly or cumulatively, are not sufficient to support a retaliation claim.

Title VII's antiretaliation provision protects employees "not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means that it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation omitted). Trivial harms are not sufficient, and "[a]n employee's decision to report discriminatory behavior cannot immunize [her] from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Generally, "petty slights, minor annoyances, and simple lack of good manners" will not deter employees from complaining about

discrimination. *Id.*

Regarding the elimination of Plaintiff's duties related to the Strategic Plan, Plaintiff has not shown that she was injured or harmed by her reduced role in creating and implementing the Plan. Nor has she shown that the possibility of losing comparable duties would dissuade a reasonable employee from making or supporting a charge of discrimination. Under the circumstances, the Court finds the alteration of Plaintiff's job responsibilities with respect to the Strategic Plan, without more, is not enough to establish that she experienced an adverse employment action.

Regarding the denial of Plaintiff's reclassification, Plaintiff concedes the strategic advisor and director positions carry the same pay grade, that there was no promise or guarantee of a higher salary, and that her reclassification would not have been a promotion. (ECF No. 81-1, ¶¶ 37, 61.) Although Plaintiff may have had an expectation that she would be reclassified as a director, there is no dispute that Plaintiff remained a strategic advisor until she resigned. Plaintiff fails to provide any analogous authority for the proposition that an employee who continues to hold the same position and was simply not reclassified may be deemed to have experienced any employment action at all, much less one causing sufficient injury or harm to support a retaliation claim. Thus, the Court is also not persuaded that the denial of Plaintiff's reclassification was an adverse employment action for purposes of stating a retaliation claim.

      c.  *Causation*

Defendant contends the third element of Plaintiff's prima facie case is lacking because Scheuermann and Morein made their decisions about the Strategic Plan and Plaintiff's reclassification before her alleged protected activity at the February 2022 meeting. Regarding

the Strategic Plan, Defendant points to evidence that in November 2021, Scheuermann and others expressed concern about the Plan because it did not encompass the voice and work of most of the agency and because some division directors did not see themselves in the Plan. (ECF No. 81-1, ¶ 66.) With regard to the decision to cancel Plaintiff's proposed reclassification, it is undisputed that Scheuermann made that decision before the February 2022 meeting. (*Id.* at ¶ 56.)

In her Response, Plaintiff identifies no evidence refuting Defendant's contention that the key decisions about Plaintiff's work on the Strategic Plan were made before the February 2022 meeting. And she concedes Scheuermann made the decision regarding her reclassification before the meeting. Thus, the decisions underlying the alleged adverse employment actions on which Plaintiff relies were already made—or, at a minimum, were already being contemplated—when the February 2022 meeting was held at which she alleges she engaged in protected activity. Accordingly, the Court finds Plaintiff cannot establish the requisite causal connection for her prima facie case.

2. <u>Pretext</u>

Even if Plaintiff could establish a prima facie case of retaliation, she presents no evidence from which a reasonable jury could infer that Defendant's stated reasons for its decisions to reject the Strategic Plan and cancel her reassignment are pretextual.

Pretext may be shown when an employer's reasons for its decisions "contain such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions that a reasonable factfinder could find them unworthy of credence. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000). "In determining whether the proffered reason for a

decision was pretextual, [courts] examine the facts as they appear *to the person making the decision* not the plaintiff's subjective evaluation of the situation." *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011) (quotation omitted). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith on those beliefs." *Id.* at 1093 (quotation omitted).

Here, Plaintiff fails to meaningfully address Defendant's stated reasons for rejecting her Strategic Plan. For example, Defendant contends that Plaintiff's proposed Plan did not encompass and voice the work of most of the Department, that it lacked specificity, and that Scheuermann and Morein did not agree with its goals and strategies. (*See* ECF No. 59 at 13.) In response, Plaintiff attempts to bypass these facially legitimate criticisms by simplistically asserting that the Plan was already "complete" when Defendant decided not to use it. (ECF No. 74 at 13.) But this does not demonstrate that Defendant's criticisms of the Plan are unworthy of credence or not genuinely held, and Plaintiff offers no additional argument on this point.

Plaintiff also fails to meaningfully engage with Defendant's stated reasons for canceling her reclassification. Defendant contends directors typically oversaw more people than Plaintiff would have, that the new leadership members were evaluating the work and structure of Plaintiff's division, and that the work justifying the reclassification was not yet present, merely planned. (ECF No. 59 at 12.) Plaintiff's contention that these concerns could have been discussed months earlier does not make sense given the leadership changes Defendant was undergoing at the time. In any event, the relevant question is not whether Defendant's reasons were wise, fair, or correct, but rather whether it "believed those reasons to be true and acted in

12

good faith upon those beliefs." *Piercy*, 480 F.3d at 1200; *see id.* ("Even a mistaken belief can be a legitimate non-pretextual reason for an employment decision."). Plaintiff has adduced no evidence Sheuermann and Morein were masking retaliatory motives or that they did not honestly believe that Plaintiff's reclassification did not make sense at a time when the new leadership was still assessing Defendant's operations.

In short, Plaintiff has not shown that Defendant's stated reasons for the decisions at issue concerning Plaintiff's employment are pretextual. This provides an additional basis for finding Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### B. Discrimination Claim

Defendant argues it is entitled to summary judgment on Plaintiff's hostile work environment claim because she cannot show any alleged conduct that was based on her sex or that was severe or pervasive. The Court agrees that Plaintiff has failed to show a genuine issue for trial.

Title VII prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of her sex. *See* 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020) (quotation omitted). To sustain her claim, Plaintiff must show "(1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Id.* (quotation omitted).

To satisfy the first element, Plaintiff relies solely on her assertion that "Marson targeted [her] and three other women because of their sex and there is no evidence he engaged in similar conduct toward male employees." (ECF No. 74 at 14.) However, she concedes that she has had no interaction with Marson since March 2020. (ECF No. 81-1, ¶¶ 16, 17.) This creates a substantial barrier for Plaintiff as these earlier complaints about Marson's conduct—whatever their nature—are untimely. *See* 42 U.S.C. § 2000e-5(e)(1).

Moreover, none of the specific conduct by Marson that Plaintiff cites is facially sex-based. Indeed, she concedes that Marson never engaged in a nearly exhaustive list of sex-based conduct, and she points to no other sex-based conduct that supports her claim. Instead, she relies on facially sex neutral conduct such as staring at her, walking through her work area, and being discourteous in meetings. While acts of harassment that are facially sex neutral can support a hostile work environment claim if the context indicates they "could be understood by a jury to be part of an overall animus and pattern of sexual discrimination and harassment," *Sanderson*, 976 F.3d at 1174, Plaintiff provides no such context here. That is, she has adduced no evidence that Marson behaved in the way that he did *because of Plaintiff's sex*.

But even if Plaintiff could establish that Marson treated her differently because of her sex, an even larger problem for her hostile work environment claim is the second element. To sustain a hostile work environment claim, a plaintiff must show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult," and "that the environment was both objectively and subjectively hostile or abuse." *Sanderson*, 976 F.3d at 1176, 1176 n.6 (quotations omitted). Having failed to establish an adverse employment action to support her retaliation claim, Plaintiff has fallen well short of establishing objectively hostile

14

conduct that was so severe or pervasive that it altered the terms or conditions of her employment. Plaintiff's vague and conclusory assertions regarding Marson's conduct are insufficient to raise a genuine issue on this point. *See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 ("[T]he nonmoving party [opposing summary judgment] may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.").

The few specific actions by Marson that Plaintiff does cite would not allow a rational jury to find she endured the steady stream of egregious conduct needed to establish the existence of a hostile work environment. *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 891 (10th Cir. 2018) (noting that isolated incidents—unless extremely serious—will not rise to the level of creating an abusive working environment); *see also E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 798 (10th Cir. 2007) (noting that a few isolated incidents of gender animus are insufficient to establish a pervasively hostile work environment). Contrary to Plaintiff's position, the fact that Defendant took steps to address her past complaints about Marson—such as removing him from a workgroup she was leading and moving or workspace—does not mean she experienced a hostile work environment. Indeed, drawing such an inference would likely discourage employers from attempting to resolve issues before they lead to a hostile work environment. In any event, Plaintiff does not allege that she had any interaction with Marson after March 2020. Nor does she allege she was harassed by anyone besides Marson.

Thus, based on the evidence presented, Plaintiff has failed to raise a question for a jury as to whether the discrimination she allegedly faced was severe or pervasive enough that it altered the terms or conditions of her employment or created an abusive working environment.

### C. Constructive Discharge

As Plaintiff has failed to raise a question for a jury as to the existence of severe or pervasive discrimination, it follows that her conclusory claim for constructive discharge fails as well. Plaintiff voluntarily resigned two months after the February 2022 meeting, and nothing has been presented which raises a genuine question of facts as to her being discharged.

### IV. CONCLUSION

Therefore, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 59), and DENIES AS MOOT its Motion to Strike (ECF No. 76). The Clerk is directed to ENTER JUDGMENT in Defendant's favor and CLOSE this case.

DATED this 26th day of August, 2025.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge